**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2104-18

RODNEA COLEMAN,

    Plaintiff-Respondent,

v.

SHEAVONRA ADDERLEY,
SHEREFER K. ARRINGTON,
STATE FARM INDEMNITY
COMPANY, AND LIBERTY
MUTUAL INSURANCE
COMPANY,

    Defendants-Respondents,

and

LIBERTY MUTUAL INSURANCE,

    Defendant/Third-Party
    Plaintiff-Appellant,

v.

SHEAVONRA ADDERLEY,
SHEREFER K. ARRINGTON,
KENYA ARRINGTON, STATE
FARM INDEMNITY COMPANY
AND GEICO INSURANCE

COMPANY,

> Third-Party Defendants-
> Respondents.

_____

Argued March 18, 2020 – Decided March 4, 2021

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0030-16.

Evan D. Haggerty argued the cause for appellant (Connell Foley LLP, attorneys; Evan D. Haggerty, of counsel and on the briefs).

Richard A. Greifinger argued the cause for respondent Rodnea Coleman.

The opinion of the court was delivered by

FUENTES, P.J.A.D.

The dispositive issue in this automobile insurance coverage case turns on whether the competent evidence, presented to the judge sitting as the trier of fact in a bench trial, supports the finding that at the time an accident occurred, the driver had a "reasonable belief" she was authorized to use and operate the insured vehicle. The judge found the record developed at trial contained sufficient competent evidence to find the driver had such a reasonable belief at the time of the accident.

Our standard of review is well-settled. "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

After reviewing the record developed at trial and mindful of our role as an intermediate appellate court, we reverse. The overwhelming competent evidence shows the driver of the car was not authorized to drive the insured vehicle at the time of the accident.

I.

In July 2014, Sherefer Arrington, the owner of a 2010 Lexus RX350 SUV insured by Liberty Mutual Insurance (Liberty Mutual), travelled to Atlanta, Georgia with her cousin, Kenya Arrington.[1] Sherefer decided to leave her Lexus at the home of Claude Griffith, Kenya's boyfriend at the time. The record shows Sherefer expected the car would remain there undisturbed until she returned

---

[1] Because Sherefer Arrington and Kenya Arrington have the same last name, we will refer to them by their first names. We do not intend any disrespect.

from her trip to Atlanta. There is no evidence to support that Sherefer expressly or implicitly authorized Kenya's daughter, Sheavonra Adderley, to drive the car.

On July 24, 2014, Adderley drove the car without Sherefer's permission while the latter was in Atlanta. Adderley was involved in a one-car accident when the Lexus struck a guardrail. There were four other occupants in the car. Rodnea Coleman, who was in the front passenger seat, fractured her left arm in the collision. Adderley left the scene without reporting the accident to the local police department.

As the owner of the car, Sherefer testified that she did not give Adderley permission to drive the vehicle. Liberty Mutual denied coverage for the accident based on Adderley's unauthorized use of the car. Liberty Mutual reached this decision based in large part on Sherefer's emphatic denial of ever giving Adderley permission to drive her car. Liberty Mutual found no reasonable basis to infer Adderley was a permissive user of the vehicle at the time of the accident.

The record contains the following statement signed and notarized by Sherefer, Adderley, and Kenya on July 31, 2014, a week after the date of the accident:

> I Sherefer K. Arrington left grey 2010 Lexus SUV with my cousin Kenya Arrington along with keys for safekeeping while she and I went away on vacation to Atlanta.

A-2104-18

The vehicle was taken without permission by her daughter, Sheavonra Adderley on [Saturday] night July 26 whereupon she had an accident on [Route] 22 with 4 other passengers. No police was called. The vehicle was returned to her home.

I was notified Monday at 4:00 p.m. No knowledge until then.

I had [the] vehicle towed while I was away to an auto shop. I returned to NJ on 7/31/14.

A Liberty Mutual investigator obtained a recorded statement from Adderley on March 24, 2015. In this interview Adderley admitted the car was parked in the driveway of her mother's "ex-boyfriend's house." When the investigator asked her if she had permission to use the car, Adderley responded: "I never had like clear permission, but it was never a yes or a no not to use it . . . ." The investigator returned to this issue of permission later in the interview:

Q. I will ask you this question again, I might have asked you this earlier, there was no permission given or not given for you to drive the vehicle?

A. Yes.

Q. So you believe you, did you drive your cousin to the airport and then drive the vehicle back home?

A. No her car, no I really can't remember but I believe I drove them to the airport but I am not sure in what car, if it was her car or my mom's car, I think it was my

A-2104-18

mom's car. I think it was my mom's car that I drove them to the airport in.

Q. The keys were they left in your care or were they in a drawer?

A. The keys were just in my house on a table.

When Sherefer learned that Adderley drove the car without her knowledge or consent, she reported the incident "to two [police] precincts," and filed a formal report. Sherefer explained at trial that she did so because "I think a police report got to be made for the insurance company. Secondly, I wanted to say she took my car without consent. I didn't want any liability and I wanted that on record."

Kenya, Adderley's mother, testified that she accepted the keys to the car directly from Sherefer. She agreed to keep the keys and understood that the car would remain in her boyfriend Griffith's driveway until Sherefer returned from Atlanta. Griffith was not home when Sherefer parked her Lexus in his driveway. He was never given the keys to the car and was never told that he had permission to use the vehicle. It is undisputed that Griffith did not give Adderley permission to use the car. As the following testimony illustrates, Kenya made graphically clear at trial that she never gave her daughter permission to drive the Lexus.

Q. Okay. And did you ever give Sheavonra permission to drive her Lexus?

6

A. No, I didn't.

Q. And when you found out that she took the car, she was in the accident, you wanted to kill her, right?

A. Of course.

Q. And you wanted to strangle her, right?

A. Of course.

Griffith also testified that he never gave anyone permission to drive any of Arrington's vehicles. A series of text messages Adderley sent Sherefer following the car accident corroborates this fact. At counsel's request, Sherefer read for the record at trial the content of a text she received from Adderley after the accident:

> I just want to say I sincerely apologize for all the problems I have caused. I know what I did was out of line and disrespectful. I take full responsibility for my actions. I honestly learned my lesson from this and will never touch what's not mine. I know you're furious with me and I accept that. But once we get over this burden I hope we can put this behind us and remain close. I love you Cousin Kim,
>
> . . . .
>
> I-D-K [I don't know] what else to say but sorry and I regret what I did.

7

## II.

It is undisputed that the Liberty Mutual policy excludes liability coverage if a person drives the covered vehicle without a reasonable belief that the insured party has given that person permission to do so. This standard of reasonableness has been consistently upheld by this court. Cox v. Russell, 367 N.J. Super. 121 (App. Div. 2004) (a vehicle used without permission is uninsured, and a person injured by that uninsured vehicle has a reasonable expectation to be covered by her uninsured motorist coverage); Campbell v. New Jersey Auto. Ins., 270 N.J. Super. 379, 386 (App. Div. 1994) ("coverage is not available to that vehicle or to the operator of that vehicle once he steals it.").

Our Supreme Court adopted the "initial permission" rule in Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488 (1960). This rule required the trial court to answer one basic question: did Sherefer give Griffith permission to use her car in the first instance? If so, the "initial permission" rule provides that "any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." Proformance Ins. Co. v. Jones, 185 N.J. 406, 412 (2005), (quoting Matits, 33 N.J. 496-97) (emphasis added). We do not need to divine what are

the outer edges of the "initial permission" rule because the uncontested evidence does not support its application in this case.

In a written letter-opinion attached to the order of judgment, the trial judge found that "Sherefer handed the key to [Kenya] knowing that [Kenya] was going to Atlanta to meet her shortly. [Kenya] left the key in a prominent place at her home and told Sheavonra where it was if needed." The trial record does not support these facts. Kenya emphatically stated that she did not give Adderley any instructions with respect to Sherefer's car. Kenya's mere possession of the car keys did not convert her to a permissive driver. Griffith was the only person who may have had the implied authority to move the car "if needed." The car was parked on his property and the keys were left inside his domicile. However, Griffith emphatically denied having any discussions with Adderley about the car.

A person commits the fourth degree offense of theft, commonly referred to as a joyride, "if, with purpose to withhold temporarily from the owner, [she] takes, operates or exercises control over a motor vehicle without the consent of the owner or other person authorized to give consent." N.J.S.A. 2C:20-10(b). Although Adderley was not found guilty of committing this criminal offense, the record developed at this civil trial established all the elements of this offense

9

for the purpose of determining the applicability of the exclusion provision in the insurance policy issued by Liberty Mutual. Adderley committed the fourth degree theft offense of joyriding, "or the like," when she took possession and operated Sherefer's Lexus automobile without Sherefer's or Griffith's consent, Under these undisputed facts, the "initial permission" rule is not applicable. Proformance, 185 N.J. 412.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2104-18